# In re V-Z-S-, Respondent

*Decided August 1, 2000*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  A taking of property constitutes a "theft offense" within the definition of an aggravated felony in section 101(a)(43)(G) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1101(a)(43)(G) (Supp. IV 1998), whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent.

(2)  The respondent's conviction for unlawful driving and taking of a vehicle in violation of section 10851 of the California Vehicle Code is a "theft offense" under section 101(a)(43)(G) of the Act.

Pro se

Before:    Board En Banc:  DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; HEIL-
            MAN, HOLMES, HURWITZ, COLE, VILLAGELIU, MATHON, JONES,
            GRANT, and MOSCATO, Board Members. Concurring and Dissenting Opinion:
            GUENDELSBERGER, Board Member, joined by SCHMIDT, Chairman; FILP-
            PU, ROSENBERG,  and MILLER, Board Members.[1]

GRANT, Board Member:

In a decision dated August 19, 1998, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. IV 1998), as an alien convicted of an aggravated felony. The Immigration Judge further determined that the respondent is ineligible for any relief from removal and ordered him removed from the United States to Lebanon. The respondent has filed a timely appeal from that decision. The appeal will be dismissed.[2]

---

[1]Board Member Fred W. Vacca participated in the deliberations  concerning this case, but retired prior to the issuance of the final decision.

[2]On appeal, the respondent argues that the Immigration Judge erred in failing to rule on his motion to change venue. However, the record reflects that the Immigration Judge denied the respondent's motion on August 11, 1998.

## I. FACTUAL BACKGROUND

The respondent is a 27-year-old male who was born in Lebanon, but who claims that he was never given citizenship in that country. On June 22, 1974, the respondent was admitted to the United States as a lawful permanent resident. The record reflects that on February 8, 1996, the respondent was convicted of grand theft of an automobile ("grand theft auto") in violation of section 487h(a) of the California Penal Code and was sentenced to 2 years' imprisonment. Based on this conviction, the Immigration and Naturalization Service issued and personally served the respondent with a Notice to Appear (Form I-862), charging him with removability pursuant to section 237(a)(2)(A)(iii) of the Act, as an alien convicted of an aggravated felony as defined in section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1994 & Supp. IV 1998). Subsequently, the Immigration Judge found the respondent subject to removal as charged.

The Immigration Judge also determined that the respondent is ineligible for relief from removal because he was convicted of an aggravated felony. *See* sections 208(b)(2)(A)(ii), (B)(i) (asylum); 240A(a)(3) (cancellation of removal); 240B(b)(1)(C) (voluntary departure) of the Act, 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); 1229b(a)(3); 1229c(b)(1)(C) (Supp. IV 1998). In addition, the Immigration Judge concluded that the respondent is ineligible for withholding of removal under section 241(b)(3)(B) of the Act, 8 U.S.C. § 1231(b)(3)(B) (Supp. IV 1998), because he was convicted of aggravated felonies for which he was sentenced to an aggregate term of imprisonment of at least 5 years.

At his removal hearing, the Service presented evidence that the respondent had been convicted of the following crimes. On May 20, 1993, the respondent was convicted of burglary in the second degree and received a prison sentence of 16 months. On June 17, 1993, he was convicted of grand theft auto and commercial burglary, for which he received concurrent prison sentences of 16 months. On August 31, 1995, the respondent was convicted of unlawful driving and taking of a vehicle and was sentenced to 5 years' imprisonment. On January 23, 1996, he was again convicted of unlawful driving and taking of a vehicle, for which he received a 2-year prison sentence. On the same day, the respondent was also convicted of grand theft auto, but his sentence was stayed. Finally, on February 8, 1996, the respondent was convicted of grand theft auto and receiving stolen property. For these convictions he received concurrent 2-year sentences of imprisonment, which were also to run concurrently with his 1995 and 1996 sentences.

In arriving at his conclusion that the respondent had been sentenced to an aggregate term of imprisonment of at least 5 years, the Immigration Judge calculated that the 16-month sentence for the grand theft auto conviction that was imposed on June 17, 1993, plus the 2-year sentence for the grand theft auto conviction that was imposed on February 8, 1996, plus the

2-year sentence for the receiving stolen property conviction that was imposed on February 8, 1996, add up to an excess of 5 years in the aggregate. Consequently, the Immigration Judge found that the respondent had been convicted of a particularly serious crime, rendering him ineligible for withholding of removal. *See* section 241(b)(3)(B)(ii) of the Act. The respondent appealed this decision, arguing that the Immigration Judge erred in pretermitting all applications for relief from removal.

## II. ISSUES ON APPEAL

The ultimate issue on appeal is whether the respondent's criminal convictions render him ineligible for withholding of removal under section 241(b)(3) of the Act. To resolve this question, we must first address two issues: (1) whether the Immigration Judge correctly calculated the respondent's multiple sentences to imprisonment for his aggravated felonies, which he found added up to 5 years in the aggregate and rendered the respondent automatically ineligible for withholding of removal; and (2) whether the respondent's conviction under section 10851 of the California Vehicle Code, for which he was sentenced to 5 years' imprisonment, is a theft offense and therefore an aggravated felony under section 101(a)(43)(G) of the Act, rendering him automatically ineligible for withholding of removal as an alien convicted of a particularly serious crime.

We find (1) that under *Matter of Aldabesheh*, 22 I&N Dec. 983 (BIA 1999), the Immigration Judge's calculation of the time for which the respondent was sentenced was incorrect; and (2) that the respondent's conviction under section 10851 of the California Vehicle Code is a "theft offense" as defined in section 101(a)(43)(G) of the Act. Therefore, we conclude that the respondent's convictions render him ineligible for withholding of removal under section 241(b)(3) of the Act.

## III. AGGREGATE SENTENCES

Section 241(b)(3)(B) of the Act provides that an alien is ineligible for withholding of removal for having committed a particularly serious crime, if he has been convicted of an aggravated felony (or felonies) for which he was sentenced to an "aggregate term of imprisonment" of at least 5 years. As noted above, the Immigration Judge determined that the respondent was sentenced to an aggregate term of imprisonment of at least 5 years. The Immigration Judge calculated this aggregate term by adding together the sentences imposed on the respondent for both of his convictions for grand theft auto on June 17, 1993, and on February 8, 1996, and for his conviction for receipt of stolen property on February 8, 1996. The Immigration

Judge did not include the respondent's sentence for his burglary conviction on May 20, 1993.[3]

Subsequent to the Immigration Judge's decision, we determined in *Matter of Aldabesheh, supra*, that where an alien has been convicted of two or more aggravated felonies and has received concurrent sentences to imprisonment, the alien's aggregate term of imprisonment, for purposes of determining eligibility for withholding of removal under section 241(b)(3) of the Act, is equal to the length of the alien's longest concurrent sentence. The record reflects that the 2-year sentences imposed for the respondent's February 8, 1996, convictions for grand theft auto and receipt of stolen property were ordered to run concurrently. Consequently, these sentences cannot be added together to calculate an aggregate term of imprisonment.

If the respondent's sentences to imprisonment were properly added for the convictions that the Immigration Judge found to be aggravated felonies, the respondent would have an aggregate term of imprisonment of only 4 years and 8 months. This calculation includes 2 years for the concurrent sentences imposed for the February 8, 1996, convictions for receipt of stolen property and grand theft auto, plus 16 months for the concurrent sentences imposed for the June 17, 1993, convictions for grand theft auto and commercial burglary, plus the 16-month sentence for the May 20, 1993, conviction for burglary in the second degree. In light of the concurrent sentences imposed on the respondent and the Immigration Judge's finding that the convictions for unlawful driving and taking of a vehicle are not aggravated felonies, we find that the Immigration Judge erred in concluding that the respondent was sentenced to an aggregate term of imprisonment equal to at least 5 years. *See Matter of Aldabesheh, supra.*

## IV. "THEFT OFFENSE" UNDER SECTION 101(a)(43)(G) OF THE ACT

We have not previously addressed in a precedent decision what constitutes a "theft offense" for purposes of section 101(a)(43)(G) of the Act. However, this question does not come to us on a clean slate.

First, we generally apply a federal standard in determining whether a state offense fits within the aggravated felony definition. *See Matter of Rodriguez-Rodriguez*, Interim Decision 991 (BIA 1999). In addition, the term "theft offense" in section 101(a)(43)(G) of the Act should be given a

---

[3]In addition, the Immigration Judge did not consider the respondent's two convictions for unlawful driving or taking of a vehicle, because he found that they were not aggravated felonies. We disagree with this finding, as discussed below.

"uniform definition independent of the labels employed by the various States' criminal codes." *Taylor v. United States*, 495 U.S. 575, 592 (1990) (discussing the term "burglary" in 18 U.S.C. § 924(e)).

Second, in addressing terms in the aggravated felony definition that are not defined by reference to a specific statute, we look to several sources for guidance. Our analysis begins with the principles of statutory construction.

> It is rudimentary that interpretation of the statutory language begins with the terms of the statute itself, and if those terms, on their face, constitute a plain expression of congressional intent, they must be given effect. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1994). Where Congress' intent is not plainly expressed, we then need to determine a reasonable interpretation of the language and fill any gap left, either implicitly or explicitly, by Congress. *Id.* at 843-44. The rules of statutory construction dictate that we take into account the design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Moreover, the paramount index of congressional intent is the plain meaning of the words used in the statute taken as a whole. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). The legislative purpose is presumed to be expressed by the ordinary meaning of the words used. *INS v. Phinpathya*, 464 U.S. 183, 189 (1984).

*Matter of Rodriguez-Rodriguez, supra*, at 993. In undertaking this task, therefore, we look not only to the term "theft offense" as it appears in section 101(a)(43)(G) of the Act, but also to analogous provisions of federal statutes, federal case law, relevant state provisions, and authoritative compendiums such as the Model Penal Code.

These sources readily confirm that although "theft" is a "popular name" for larceny,[4] the term "theft" is generally considered in federal law "to be broader than 'commonlaw larceny.'" *United States v. Turley*, 352 U.S. 407, 414 (1957). We are mindful that, under the common law, "larceny" requires the intent to permanently deprive the owner of possession or use of his property. *See Morissette v. United States*, 342 U.S. 246, 270 (1952). *But see United States v. Maloney*, 607 F.2d 222, 226 (9th Cir. 1979) (providing that the offense of larceny as defined in 18 U.S.C. § 661 does not require a permanent deprivation of property).[5] Thus, one cannot answer the question whether the respondent's August 31, 1995, conviction under section 10851

---

[4]*Black's Law Dictionary* 1477 (6th ed. 1990).

[5]Even the principle that common law larceny requires proof of an intent to permanently deprive an owner of his or her property is not beyond question. *See, e.g., Pennsylvania Indemnity Fire Corp. v. Aldridge*, 117 F.2d 774, 776 (D.C. Cir. 1941) ("[T]he only rule as to felonious intent in larceny to which all the cases can be reconciled, is that the intent of the taker must be to appropriate the stolen property to a use inconsistent with the property rights of the person from whom it is taken."). The court in *Pennsylvania Indemnity Fire Corp.* held that the term "theft," as used in an automobile insurance policy, did not require a showing of intent to permanently deprive the owner of his or her property. *Id.* at 778.

of the California Vehicle Code is a "theft offense" by simply opining that there can be no theft without an intent to permanently deprive an owner of his or her property. This conclusion is equally supported by the Model Penal Code description and commentary regarding theft offenses, which do not limit the deprivation necessary to constitute theft solely to circumstances where there is an intent to permanently deprive an owner of property. The federal statutes most relevant to this discussion are Chapter 31 of Title 18 of the United States Code (entitled "Embezzlement and Theft") and the National Motor Vehicle Theft Act, 18 U.S.C. §§ 2311-2313 (1994) ("Dyer Act").

The provisions of Chapter 31 of Title 18, including 18 U.S.C. §§ 641 and 661, deal with "embezzlement and theft" crimes within the maritime and special jurisdictions of the United States. Section 661 does not directly define the offense of larceny or theft, and these terms do not appear in its language. However, all courts "which have considered the question have concluded that the offense defined in 18 U.S.C. § 661 is larceny." *United States v. Maloney*, *supra*, at 226. Moreover, 18 U.S.C. § 661 is not limited to offenses amounting to common-law larceny and "does not require the element of intent to permanently deprive the owner of his property." *Id.* at 231*; see also United States v. Henry*, 447 F.2d 283, 285 (3d Cir. 1971) (recognizing that "courts have used terms such as 'stealing,' 'theft,' and 'larceny' interchangeably"). Rather, the United States Supreme Court's delineation of the meaning of the word "stolen" in *United States v. Turley, supra*, at 417, has been held applicable in interpreting the phrase "with intent to steal or purloin" in 18 U.S.C. § 661. *Id.* at 413.[6] Similarly, the United States Court of Appeals for the Ninth Circuit has held that the intent required to constitute a violation of 18 U.S.C. § 641 is "the intent to appropriate [property] to a use inconsistent with the owner's rights and benefits." *Ailsworth v. United States*, 448 F.2d 439, 442 (9th Cir. 1971).

The Dyer Act, enacted in 1919, deals with the specific crimes of automobile taking in a straightforward manner: "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2312. In *United States v. Turley, supra*, the Supreme Court rejected narrow interpretations of the word "stolen" that restricted the term to those offenses that would constitute common-law larceny. Instead, the Court held that the term "stolen," as used in the Dyer Act, includes "all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not

---

[6]The term "steal" denotes "the commission of theft." *Black's Law Dictionary*, *supra*, at 1413.

the theft constitutes common-law larceny." *United States v. Turley*, *supra*, at 417. In reaching this result, the Justices relied on the fact, related in the legislative history of the Dyer Act, that the advent of the automobile had created new problems with which existing state law on larceny was not fully equipped to deal. "The automobile was uniquely suited to felonious taking whether by larceny, embezzlement or false pretenses. It was a valuable, salable article which itself supplied the means for speedy escape. 'The automobile (became) *the perfect chattel for modern large-scale theft.'"* *Id.* at 413 (quoting Hall, *Theft, Law and Society* 235 (2d ed. 1952)) (emphasis added). The Court also noted the following:

> Throughout the legislative history Congress used the word 'stolen' as synonymous with 'theft,' a term generally considered to be broader than 'commonlaw larceny.' To be sure, the discussion referred to 'larceny' but nothing was said about excluding other forms of 'theft.' The report stated the object of the Act in broad terms, primarily emphasizing the need for the exercise of federal powers. No mention is made of a purpose to distinguish between different forms of theft, as would be expected if the distinction had been intended.

*United States v. Turley*, *supra*, at 414-15 (footnotes omitted).

In the wake of *Turley*, the federal courts of appeals have uniformly applied a broad reading to the term "stolen" in the Dyer Act. According to the Ninth Circuit, the jurisdiction in which this case arises, the Dyer Act is "not to be interpreted so narrowly as to limit its application to situations which at common law would be considered larceny. It includes all takings with a criminal intent to deprive the owner of the rights and benefits of ownership." *United States v. Pittman*, 441 F.2d 1098, 1099 (9th Cir. 1971). The Fifth Circuit has articulated the standard for conviction under the Dyer Act in terms strikingly similar to those employed in the statute at issue in this case: "[A] defendant must have had the intent to permanently or temporarily deprive the rightful owner of the rights and benefits of ownership." *United States v. Chatham*, 568 F.2d 445, 449 (5th Cir. 1978). According to the Eighth Circuit, the Dyer Act is violated "by 'something less than permanency and something less than a deprival of the totality of ownership.'" *Kimball v. United States*, 437 F.2d 921, 923 (8th Cir. 1971) (quoting *United States v. Bruton*, 414 F.2d 905 (8th Cir. 1969)); *accord United States v. Fouchey*, 462 F.2d 585, 586 (8th Cir. 1972) (stating that an allegation that the defendants may have been joyriding rather than engaging in a commercial venture is without significance in a Dyer Act prosecution); *McCarthy v. United States*, 403 F.2d 935, 938 (10th Cir. 1968) (finding that a vehicle may be "stolen" under the Dyer Act whether there was an intent to deprive the owner permanently or only for so long as suited the purposes of the taker).

The Model Penal Code also distinguishes "theft" from the common-law concept of "larceny." The Model Penal Code itself defines "theft" as

the unlawful taking of, or the unlawful exercise of control over, movable property of another with the intent to deprive him thereof. Model Penal Code and Commentaries § 223.2(1) (1980). The term "deprive" means

> (a) to withhold property of another permanently *or for so extended a period as to appropriate a major portion of its economic value*, or with intent to restore only upon payment of reward or other compensation; or (b) to dispose of the property so as to make it unlikely that the owner will recover it.

Model Penal Code § 223.0(1) (emphasis added). The question whether there is a "theft" under the Model Penal Code, therefore, turns on whether the specific taking entails a deprivation under the above definition. *See* Model Penal Code § 223.2, cmt. 6, at 174 ("[A]lthough the common-law definition of larceny was often formulated in terms of an intent to deprive permanently, convictions were sustained upon evidence that fell considerably short of proving a purpose totally and finally to deprive another of his property."). In addition, several states have adopted a definition of "theft" very similar to that provided by the Model Penal Code. *See, e.g.,* Ky. Rev. Stat. Ann. §§ 514.010(1), 514.030 (Banks-Baldwin 1998); Me. Rev. Stat. Ann. tit. 17-A, §§ 352.3, 353 (West 1999); Nev. Rev. Stat. §§ 205.0824, 205.0832 (Michie 1999); N.J. Stat. Ann. §§ 2C:20-1(a), 2C:20-3 (West 1999); Tex. Penal Code Ann. §§ 31.01(2), 31.03 (West 1999).[7] We would find that a conviction under this Model Penal Code standard constitutes a theft offense. However, we also would find that the federal case law includes a somewhat broader concept of the perpetrator's intent than that embodied in the Model Penal Code definition of the term "deprive." Otherwise stated, the federal standard is not entirely restricted to the specific circumstances set forth by the Model Penal Code formulation.[8]

To summarize, we conclude from our analysis of pertinent federal statutes and case law that Congress' use of the term "theft" is broader than the common-law definition of that term. Specifically, a "theft offense" under section 101(a)(43)(G) of the Act does not require as a statutory ele-

---

[7]By contrast, at least one state has specifically held that a temporary deprivation would constitute theft. For example, to be convicted of "theft by taking" under section 16-8-2 of the Official Code of Georgia Annotated requires only an intent to temporarily deprive an owner of property. Regardless of whether a defendant intended to take the property and withhold it permanently, his intent to take it for his own temporary use without the owner's authorization evinces an intent to commit theft. *Smith v. State*, 323 S.E.2d 257 (1984).

[8]Under the dissent's approach, one could have a federal larceny or theft conviction under the Dyer Act or within the maritime and special jurisdictions of the United States that would not be found to constitute a "theft" offense under section 101(a)(43)(G) of the Act. This is so because the elements of these federal crimes do not fall within the parameters of the Model Penal Code definition, which requires a permanent deprivation of the owner's interest in the property. We do not agree with this result.

ment the specific intent to permanently deprive an owner of his property, an element that was present in the common-law definition of larceny. Rather, a taking of property constitutes a "theft" whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent. Not all takings of property, however, will meet this standard because some takings entail a de minimis deprivation of ownership interests.

## V. CALIFORNIA VEHICLE CODE SECTION 10851 AS A "THEFT OFFENSE"

The respondent was convicted on August 31, 1995, of unlawful driving or taking of a vehicle in violation of section 10851 of the California Vehicle Code, and he was sentenced to 5 years' imprisonment.[9] The criminal Information for this offense alleged the following:

> On and between February 2, 1995 and February 8, 1995, in the County of Los Angeles, the crime of UNLAWFUL DRIVING OR TAKING OF A VEHICLE, in violation of VEHICLE CODE SECTION 10851(A), a Felony, was committed by [Respondent], who did willfully and unlawfully drive and take a certain vehicle . . . then and there the personal property of ABLE AUTO PAWN *without the consent of and with intent, either permanently or temporarily, to deprive the said owner of title to and possession of said vehicle.* (Emphasis added.)

The Immigration Judge found that the respondent's conviction was not for an aggravated felony under section 101(a)(43)(G) of the Act. According to the Immigration Judge, the crime was not a theft offense because

> under the California Vehicle Code, one may be convicted of this offense simply by unlawfully driving a vehicle and temporarily depriving the owner of possession. This is not a theft . . . . Theft by its common law definition requires the taking and depriving of the owner of the property with intent to do so permanently. A glorified borrowing of property is not a theft.

We concur with the Immigration Judge that a "glorified borrowing" of property is not a theft offense. However, based on the language of section 10851 of the California Vehicle Code, we do not agree that the respondent was convicted of a crime analogous to a "glorified borrowing." Instead, having analyzed the requirements for conviction under the California statute in light of the federal law and Model Penal Code constructions of

---

[9]Although the respondent was also convicted on January 23, 1996, of the same offense and was sentenced to 2 years' imprisonment, for purposes of clarity we will focus on the 1995 conviction and its accompanying 5-year sentence.

"theft" previously discussed, we conclude that the respondent's August 31, 1995, conviction for unlawful driving or taking of a vehicle, in violation of section 10851 of the California Vehicle Code, is a "theft offense" under section 101(a)(43)(G) of the Act.

## A. Applicable California Statutes

At the time of the respondent's 1995 conviction for violating section 10851(a) of the California Vehicle Code, the state legislature had enacted three separate statutes punishing the taking or use of a vehicle without the owner's consent: section 10851(a) of the California Vehicle Code, defining theft and unlawful driving or taking of a vehicle; section 499b of the California Penal Code, defining the taking of a vehicle for temporary use; and section 487h(a) of the California Penal Code, defining grand theft auto. *See generally People v. Morales*, 24 Cal. Rptr. 2d 847 (Cal. Ct. App. 1993).

Section 10851 of the California Vehicle Code defined theft and unlawful driving or taking of a vehicle, providing in pertinent part as follows:

> Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, . . . is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment in the state prison for 16 months or two or three years or a fine of not more than ten thousand dollars ($10,000), or both, or by imprisonment in the county jail not to exceed one year or a fine of not more than one thousand dollars ($1,000), or both.

Cal. Veh. Code § 10851(a) (West 1995).

Section 499b of the California Penal Code defined the taking of a vehicle for temporary use, stating in pertinent part as follows:

> Any person who shall, without the permission of the owner thereof, take any automobile, bicycle, motorcycle, or other vehicle or motorboat or vessel, for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor . . . .[10]

Cal. Penal Code § 499b (West 1995).

Section 487h of the California Penal Code defined "grand theft" of

---

[10]This provision was commonly known as the "joyriding" statute. In 1996, the California legislature amended section 499b of the Penal Code, substituting "bicycle or motorboat" for "automobile, bicycle, motorcycle, or other vehicle or motorboat." *See* 1996 Cal. Stat. ch. 660, § 3 (A.B. 3170). The legislative intent behind this amendment was "to clarify and streamline existing law by deleting provisions in Section 499b of the Penal Code that are generally duplicative of provisions in subdivision (a) of Section 10851 of the Vehicle Code." *Id.* The amendment to section 499b of the Penal Code was not intended to be construed as evidencing a legislative intent to eliminate a crime. *Id.*

vehicles, stating in pertinent part as follows:

> Every person who feloniously steals or takes any motor vehicle, as defined in Section 415 of the Vehicle Code, . . . is guilty of grand theft . . . .[11]

Cal. Penal Code § 487h (West 1995).

These state statutes established different crimes depending on the intent of the perpetrator in attempting to take or drive a motor vehicle. *People v. Morales*, *supra*, at 1390-95. A conviction under section 10851(a) of the California Vehicle Code required an intent to permanently or temporarily deprive the owner of his vehicle without his consent. A conviction under section 499b of the California Penal Code merely required an intent to use or operate another's vehicle without the owner's consent. There existed no requirement under section 499b of an intent to deprive the owner of his property. Therefore, where a person was guilty of joyriding, or temporarily operating another's vehicle, without an intent to deprive the owner of such vehicle, a conviction could not be effected under section 10851(a) of the California Vehicle Code.

## B. Application of the Federal Standard

We conclude that the respondent's conviction under section 10851 of the California Vehicle Code should be classified as a "theft offense" under the federal standard we have articulated. Like the Dyer Act, section 10851 is directed to a specific variant of criminal taking of property. The fact that a prosecutor does not have to prove specific intent to permanently deprive the owner of property in order to secure a conviction under section 10851 does not alter the character of the public harm—vehicle taking—that is to be punished. We agree with the principle, as articulated by the Ninth Circuit, that "theft" of an automobile is established whenever there is an intent to deprive the owner of the rights and benefits of ownership. *See United States v. Pittman*, *supra*. Similarly, we find that the concept of "theft" in this context is satisfied by "something less than permanency" and something less than total deprivation of ownership rights. *Kimball v. United States*, *supra*.

Section 10851 is neither a strict liability nor a regulatory offense; it does not punish the mere possession of a vehicle not one's own or a misunderstanding or mistake that has led to such possession. A conviction

---

[11]On January 1, 1997, this section was repealed and a new section 487 became operative, defining grand theft, in pertinent part, as the taking of an automobile. *See* Cal. Penal Code § 487(d) (West 1999).

requires a driving or taking, without the owner's consent, coupled with a *specific* intent to deprive the owner of title and/or possession, either temporarily or permanently. *See People v. Thomas*, 373 P.2d 97 (1962) (noting that in contrast to the joyriding statute, section 499b of the Penal Code, conviction under section 10851(a) requires a specific intent to deprive the owner of title to or possession of the vehicle). Any such taking, on its face, can be said to "deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *United States v. Turley, supra*, at 417. We believe that such deprivation of ownership interests, sufficient to bring conduct within the scope of the Dyer Act, is likewise sufficient to bring the conduct within the scope of section 101(a)(43)(G) of the Act.

The respondent's record establishes that, at a minimum, he was convicted of a felony under section 10851(a) of the California Vehicle Code for "willfully and unlawfully driv[ing] and tak[ing] a certain vehicle . . . without the consent of and *with intent . . . temporarily . . . to deprive the said owner of title to and possession of said vehicle*." Cal. Veh. Code § 10851(a) (emphasis added). The respondent's conviction for this conduct reflects an intent to, at the very least, temporarily deprive the rightful owner of the automobile of "the rights and benefits of ownership." *United States v. Turley*, *supra*, at 417. Accordingly, the respondent's conviction falls within the scope of section 101(a)(43)(G) as a "theft offense."

The respondent's 1995 conviction was not under section 499b of the California Penal Code, which at the time was the California "joyriding" statute. The principal and "subtle" difference between the respondent's conviction under section 10851 and a conviction under the California "joyriding" statute is that "joyriding" does not require a specific intent to deprive the owner of title or possession of the vehicle. Rather, it simply requires a general intent to be "temporarily *using or operating* the same." *People v. Thomas*, 373 P.2d 97, 101 (Cal. 1962) (emphasis added).

As we have previously done in our decisions holding that a felony conviction for drunk driving constitutes an aggravated felony under section 101(a)(43)(F) of the Act, we also take into account here the impact on the victims and society of the crimes committed. *See Matter of Puente*, 22 I&N Dec. 1006 (BIA 1999); *Matter of Magallanes*, 22 I&N Dec. 1 (BIA 1998). The problems Congress recognized 80 years ago in enacting the Dyer Act are even more prevalent today. Intentional, nonconsensual takings of automobiles rarely amount to "glorified borrowing." Rather, such takings almost invariably involve a significant impairment of ownership rights; even when vehicles are recovered, they are likely to have been deliberately or accidentally damaged.

As the Fifth Circuit has recognized, "the unauthorized use of a vehicle likewise carries a substantial risk that the vehicle might be broken into, 'stripped,' or vandalized, or that it might become involved in an accident."

*United States v. Galvan-Rodriguez*, 169 F.3d 217 (5th Cir. 1999). Such factors led the Fifth Circuit to conclude that unauthorized use of a motor vehicle constitutes a "crime of violence" under 18 U.S.C. § 16(b) (1994), which, of course, would also make it an aggravated felony under section 101(a)(43)(F) of the Act. *Id.* at 219-20. In this case, we do not reach the issue whether a conviction under section 10851(a) of the California Vehicle Code constitutes a conviction for a crime of violence, and further, we recognize that the Court of Appeals for the Ninth Circuit, in which jurisdiction this case arises, has recently ruled that burglary of an automobile under California law does not constitute a crime of violence. *Ye v. INS*, 214 F.3d 1128 (9th Cir. 2000). However, for many of the reasons cited by the Fifth Circuit, we believe that the "full range of the conduct" described in section 10851(a) squarely places that conduct within the ambit of a "theft offense," as that term is employed in section 101(a)(43)(G) of the Act. Therefore, unlike the dissent, we conclude that section 10851 is not a "divisible" statute that requires a factual determination whether a particular criminal had the specific intent to permanently deprive the owner of his or her vehicle.[12]

We note that under the California precedent, the taking of property is not a "theft" absent the specific intent to permanently deprive the victim of his or her property. *See In Re Albert A.*, 55 Cal. Rptr. 2d 217 (Cal. Ct. App. 1996); *People v. Jaso,* 84 Cal. Rptr. 567 (Cal. Ct. App. 1970). However, the state courts have repeatedly concluded that this specific intent can be *presumed* whenever one unlawfully takes, or attempts to take, the property of another. *In Re Albert A., supra*; *People v. Morales*, *supra*; *People v. Jaso, supra.* Thus, even circumstances in which a car has been taken and abandoned after 1 hour can support the inference that the perpetrator intended to deprive the owner permanently of the vehicle. *People v. DeLeon*, 188 Cal.

---

[12]We distinguish the present case from our decision in *Matter of D-*, 1 I&N Dec. 143 (BIA 1941), where we held that a conviction under a predecessor statute to section 10851 was not a crime involving moral turpitude because the statute in question could include a mere temporary taking, as well as a permanent deprivation of the vehicle. *Id*. at 145. An offense involving the taking of property need not be a crime involving moral turpitude in order to be considered a "theft" offense. More pertinent to this case, however, is our finding in *Matter of Grazley*, 14 I&N Dec. 330 (BIA 1973), that a taking could constitute "theft" even if it did not include the turpitudinous element of intent to permanently deprive the owner of his or her property.

In *Grazley*, we reviewed section 283 of the Criminal Code of Canada, which provided for a theft conviction whether the taking was permanent or temporary. Ordinarily, a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended. Because section 283 included some offenses that involved moral turpitude and others that did not, it was treated as a "divisible" statute. Therefore, we found it permissible to look beyond the statute to the record of conviction to determine whether the conviction was rendered under the portion of the statute dealing with crimes that did involve moral turpitude. *Id.* at 332-33.

Rptr. 63 (1982); *see also People v. Tellez*, 89 P.2d 451 (Cal. Ct. App. 1939) (finding that where a car was taken and abandoned 4 miles away with tires stripped there was a permanent intent to deprive the owner of the vehicle).

California courts have thus rejected the theory applied by the Immigration Judge to this respondent's conviction—that because the respondent *might* have been involved in a mere joyriding episode, his offense cannot have constituted a theft. *See People v. Morales, supra*. In *Morales*, the defendant argued that an intent to permanently deprive the owner of property cannot be inferred from the break-in and attempted taking of a locked automobile. The court disagreed.

> If, as defendant suggests, intent to permanently deprive the owner of property cannot be inferred from the circumstances surrounding the break-in, then it would be impossible to prove that an unlawful entry into a locked car constitutes automobile burglary when, in cases such as this, the culprit is caught immediately after the entry. In fact, applying defendant's reasoning, it would be impossible to prove automobile burglary (and even car theft in violation of section 487 or a violation of Vehicle Code section 10851) when the culprit actually succeeds in taking the vehicle but is stopped before he or she has driven it a substantial distance or for a substantial time. Under defendant's theory, the defense could argue that the trier of fact cannot infer an intent to permanently deprive from the break-in and actual taking of the vehicle because it is possible the culprit simply might have intended to joyride. The Legislature could not have intended such an absurd result.

*Id.* at 853.

California case law, therefore, closely tracks the interpretation of the Dyer Act by the federal courts, as well as the trend described by the Model Penal Code in its discussion of "theft." As the Model Penal Code commentary states, theft can be found even where evidence "[falls] considerably short" of establishing a specific intent to permanently deprive an owner of property. Model Penal Code § 223.2, cmt. 6, at 174. Our task, of course, is not to engage in a fact-finder's exercise of evaluating evidence in light of permissible evidentiary presumptions. Rather, it is to determine the character of the offenses described under this statute, section 10851, and to decide whether they meet the federal standard of a "theft offense." In making this determination, we find it highly persuasive that, under California law, the heightened standard of "specific intent to permanently deprive"–a standard that we have stated does not need to be met to constitute a theft offense–can be presumed from the mere *fact* of an unlawful taking, even if quite temporary.

In the case before us, where the conviction in question had as an element the specific intent to temporarily or permanently deprive the owner of title to and possession of the vehicle, we are satisfied that the conviction is for a "theft offense" as such offenses have been understood in the federal law. Because we find that the respondent's conviction under section

10851(a) falls within the definition of a "theft offense" under section 101(a)(43)(G) of the Act, and he was sentenced to at least 5 years' imprisonment for this crime, the respondent has been convicted of a particularly serious crime. *See* section 241(b)(3)(B) of the Act; *Matter of S-S-*, 22 I&N Dec. 458 (BIA 1999). Consequently, the respondent is ineligible for withholding of removal under section 241(b)(3) of the Act.[13]

## VI. CONCLUSION

The respondent's conviction for grand theft auto is a conviction for an aggravated felony under section 101(a)(43)(G) of the Act. He is therefore removable as charged under section 237(a)(2)(A)(iii) of the Act. The respondent's conviction for "unlawful taking and driving of a vehicle" under section 10851 of the California Vehicle Code is also a theft offense and an aggravated felony under section 101(a)(43)(G) of the Act. Because the respondent received a 5-year sentence of imprisonment for this crime, he has been convicted of a particularly serious crime. Consequently, he is ineligible for relief from removal. *See Matter of S-S-*, *supra*. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

*CONCURRING AND DISSENTING OPINION*: John Guendelsberger, Board Member, in which Paul W. Schmidt, Chairman; Lauri Steven Filppu, Lory Diana Rosenberg, and Neil P. Miller, Board Members, joined

I respectfully concur in part and dissent in part.

No one disputes that the respondent is removable for having been convicted under section 487h(a) of the California Penal Code of an aggravated felony, grand theft of an automobile ("grand theft auto"), or that this conviction renders the respondent ineligible for asylum under sections 208(b)(2)(A)(ii) and (B)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(2)(A)(ii) and (B)(i) (Supp. IV 1998). The only issues on appeal concern the respondent's eligibility for withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3) (Supp. IV 1998). In particular, the respondent must show that he has not been convicted of a particularly serious crime, either an aggravated felony for which he has been sentenced to an aggregate term of imprisonment of at least 5 years or

---

[13]While we respect the dissent's articulation of its position to the contrary, we believe that the analysis set forth herein speaks for itself and that no further response to the dissent is required.

an offense that is otherwise considered a "particularly serious crime" under section 241(b)(3)(B)(ii) of the Act.

I disagree with the majority's determination that the respondent's conviction under section 10851 of the California Vehicle Code, for which he was sentenced to 5 years of imprisonment, is an aggravated felony "theft offense" under section 101(a)(43)(G) of the Act, 8 U.S.C. § 1101(a)(43)(G) (Supp. IV 1998).[1]

## I. ISSUE ON APPEAL

The issue in this case is whether the respondent's conviction for taking a vehicle is an aggravated felony under section 101(a)(43)(G) of the Act, which refers to "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least 1 year."

The respondent was convicted under section 10851 of the California Vehicle Code, which provides, in pertinent part, as follows:

Theft and unlawful driving or taking of a vehicle

a) Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with *intent either to permanently or temporarily deprive* the owner thereof of his or her title to or possession of the vehicle, *whether with or without intent to steal* the vehicle, . . . is guilty of a public offense . . . .

Cal. Veh. Code § 10851 (West 1995) (emphasis added).

## II. DECISION BELOW

The Immigration Judge noted that section 10851 of the California Vehicle Code covers a wide range of conduct. At one extreme, it includes takings amounting to a permanent deprivation of the owner's title or possession. At the other end of the spectrum, it includes takings that do not involve an intent to steal the vehicle at all and that only temporarily deprive the owner of title or possession. The respondent in this case was charged under section 10851 for unlawfully driving and taking a vehicle "with intent *either permanently or temporarily*, to deprive the said owner of title to and possession of said vehicle." (Emphasis added.) The Immigration Judge concluded that

one may be convicted of this offense simply by unlawfully driving a vehicle and tem-

---

[1] I agree with the majority that the Immigration Judge erred, under *Matter of Aldabesheh*, 22 I&N Dec. 983 (BIA 1999), by adding together concurrent sentences to find an aggregate sentence of over 5 years in finding the respondent ineligible for withholding of removal.

porarily depriving the owner of possession. This is not a theft. For that offense to be an aggravated felony there must be some showing that it is a theft offense under Section 101(a)(43)(G). Theft by its common law definition requires the taking and depriving of the owner of the property with intent to do so permanently. A glorified borrowing of property is not a theft. Consequently, those offenses are not a part of the calculation.

For the reasons stated below, I agree with the Immigration Judge's conclusion that some convictions under section 10851 of the California Vehicle Code are not aggravated felony "theft" offenses under section 101(a)(43)(G) of the Act.

## III. ANALYSIS

### A. The Meaning of "Theft" in Section 101(a)(43)(G) of the Act

Congress designated "theft" offenses as aggravated felonies under section 101(a)(43)(G) without providing a definition of the term "theft" and without referencing any other provisions in the United States Code. In the absence of a definition of "theft" in the Act, or of some other clear expression of congressional intent, our task is to identify or formulate a uniform definition of "theft" for purposes of the immigration law, in keeping with the intent of the legislation as a whole. *Castro-Baez v. Reno,* 217 F.3d 1057 (9th Cir. 2000)*; Ye v. INS*, 214 F.3d 1128 (9th Cir. 2000); *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999); *Matter of Perez*, 22 I&N Dec. 1325 (BIA 2000).

Absent sufficient indication to the contrary, we assume that Congress intends the words in its enactments to carry their "'ordinary, contemporary, and common meaning.'" *Castro-Baez v. Reno, supra*, at 1057 (quoting *United States v. Baron-Medina, supra*); *see also United States v. Zavala-Sustaita*, 214 F.3d 601 (5th Cir. 2000); *United States v. Baron-Medina*, *supra*. We determine the "ordinary, contemporary, and common meaning" of the term "theft" by looking to the common law, the contemporary meaning of the term as expressed in state and federal law, and other respected sources such as the Model Penal Code. *Taylor v. United States*, 495 U.S. 575, 598 (1990).

Unlike a number of other provisions in section 101(a)(43), Congress did not reference any provisions of federal law when it included "theft" in the aggravated felony definition. Furthermore, that overall definition directs that the term "applies to an offense described in this paragraph whether in violation of Federal or State law." Section 101(a)(43) of the Act. Here, Congress used a generic common-law crime, or, at least, a popular name for a common-law crime, that is frequently prosecuted by the states. This suggests that we should give meaningful weight to the approach taken by the state law in defining "theft" when we fill in any gaps in the statutory lan-

guage as applied in individual cases.

In addressing the meaning of the term "burglary" in a federal sentencing provision, the United States Supreme Court found that Congress, in the absence of a federal statutory definition, meant to use the term "burglary" in "the generic sense in which the term is now used in the criminal codes of most States." *Taylor v. United States*, *supra*, at 598. In *Taylor*, the Court derived a federal generic definition of burglary consistent with the use of that term in most state criminal codes and in the Model Penal Code. *Id*.; *see also United States v. Baron-Medina*, *supra*, at 1146 (looking to "'the ordinary, contemporary, and common meaning of the words that Congress used'" in determining the meaning of the term "sexual abuse of a minor" in the aggravated felony provision at section 101(a)(43)(A) of the Act (quoting *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1174 (9th Cir. 1999))). As discussed below, the common-law understanding of "theft" and the contemporary definition of "theft" in most state codes is consistent with the approach described in the Model Penal Code, which includes as theft offenses those takings of property that are permanent or essentially equivalent to a permanent dispossession because of prolonged use or manner of disposal. Mere temporary dispossession of property, by contrast, generally is not considered to fit within the concept of theft.

The majority formulates a definition of "theft" based primarily on the broad construction afforded to the federal offense of transporting stolen vehicles in interstate commerce under the Dyer Act provision at 18 U.S.C. § 2312. *See* National Motor Vehicle Theft Act, 18 U.S.C. §§ 2311-2313 (1994) ("Dyer Act"). As discussed below, however, the Dyer Act does not employ the term "theft." Moreover, the Dyer Act is not concerned with the full range of offenses involving stolen property, but narrowly addresses the transport of stolen vehicles in interstate commerce. The majority minimizes the importance of state statutes and the Model Penal Code provisions, which continue to emphasize the distinction between takings that are essentially permanent in nature and those that amount to temporary dispossession of property.

There is no definition of the term "theft" in section 101(a)(43)(G) of the Act. Nor, as noted above, is there any reference to a specific provision in the federal criminal code, as in some of the other paragraphs setting forth offenses that are aggravated felonies. *See, e.g.*, sections 101(a)(43)(B), (C), (D), (E), (H), (I), (J), (K), (L), (M), (P) of the Act. In the absence of a specific reference to a federal definition of a term used in defining an aggravated felony, we have looked to a variety of sources in determining the intended meaning. *See, e.g.*, *Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991, at 994 (BIA 1999) (noting that in defining the term "sexual abuse of a minor" in section 101(a)(43)(A) of the Act, "we are not obliged to adopt a federal or state statutory provision").

## 1. Common-Law Theft, the Model Penal Code, and State Law

1355

For a crime of taking of property to be a theft, the common law required a specific intent to permanently deprive the owner of the property. *See In re Albert A.*, 55 Cal. Rptr. 2d 217 (Cal. Ct. App. 1996) (holding that the taking of property of another is not a "theft" absent the specific intent to permanently deprive the victim of his or her property)*; Matter of Grazley*, 14 I&N Dec. 330 (BIA 1973); *Matter of D-*, 1 I&N Dec. 143 (BIA 1941).

The Model Penal Code specifically addresses the contemporary meaning of the term "theft" in the criminal law and provides a particularly useful description and commentary on the scope of various theft offenses, including takings of vehicles. *See* Model Penal Code and Commentaries pt. II, art. 223 (1980).  In describing the subset of theft offenses generally described as larceny, i.e., unlawful takings of movable property, the Model Penal Code provides that a person is guilty of theft "if he unlawfully takes, or exercises unlawful control over, movable property of another *with purpose to deprive* him thereof."  Model Penal Code § 223.2(1) (emphasis added).  The term "deprive" is defined as follows:

> "[D]eprive" means: (a) to withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or (b) to dispose of the property so as to make it unlikely that the owner will recover it.

Model Penal Code § 223.0(1).  This definition of the term "deprive" includes both purposefully permanent deprivations as well as several classes of temporary deprivations that essentially destroy the value of the property for the owner. Many states have adopted and follow this definition when dealing with the crime of theft. *See, e.g.*, Ariz. Rev. Stat. Ann. § 13-802 (West 1999); Colo. Rev. Stat. Ann. § 18-4-401 (West 1999); Nev. Rev. Stat. Ann. § 205.0832 (Michie 1999); N.J. Stat. Ann. § 2C:20-3 (West 1999); N.Y. Penal Law § 40-155.00(3) (McKinney 1999); 18 Pa. Cons. Stat. Ann. § 3921 (West 1999); Tex. Penal Code Ann. § 31.03 (West 1999).

The Commentaries to the Model Penal Code explain that "[a]lthough the common law definition of larceny was often formulated in terms of an intent to deprive permanently, convictions were sustained upon evidence that fell considerably short of proving a purpose totally and finally to deprive another of his property."  Model Penal Code § 223.2, cmt. 6, at 174. Where an offender takes property of another for temporary use without intending to return it and then abandons it, the offense was typically treated as a permanent taking. *Id.* For example, an unlawful taking of a lawnmower in early summer with the intent to return it in the fall, when it would no longer be useful, is sufficient deprivation to amount to a theft offense. An unlawful taking of the mower for a day or 2, however, would not be a theft offense under the Model Penal Code.

The Model Penal Code distinguishes the "unauthorized use" of an auto-

mobile from the theft of an automobile. *See* Model Penal Code § 223.9. The "unauthorized use" offense involves a "temporary dispossession" and is categorized as a misdemeanor. An unauthorized use is distinguished from a deprivation for an extended period of time in which a "temporary use ripens into conduct that makes recovery by the owner unlikely." Model Penal Code § 223.9, cmt. 4, at 276. In the latter situation, the offense is treated as a theft offense under Article 223, with graver sanctions available. *Id*. In describing the offense of temporary dispossession of a vehicle, the Model Penal Code states as follows:

> The typical situation dealt with is the "joyride," i.e., the taking of another's automobile without his permission, not for the purpose of keeping it but merely to drive it briefly. The offense is typically committed by young people, and the car is generally returned undamaged. Such behavior would not amount to larceny, which, as traditionally defined, requires proof that the actor intended to deprive the owner permanently. Under the Model Penal Code, theft may be committed not only where the actor contemplates permanent dispossession of the owner but also where the actor contemplates deprivation for an extended period of time or a disposition of the property under circumstances that make recovery by the owner unlikely.

*See* Model Penal Code § 223.9, cmt. 1, at 271 (footnotes omitted). The Model Penal Code therefore applies the same general rule distinguishing permanent takings (theft offenses) from temporary dispossession (unauthorized use) in the case of motor vehicles as it does to other movable property.

### 2. Federal Statutory Provisions Related to Theft Offenses

Although some provisions of the federal law criminalize the taking of property without regard to whether the taking was temporary or permanent, these provisions do not use the term "theft." Rather, they refer to "steal[ing]" or "purloin[ing]," and the choice of these terms has been recognized as a deliberate expansion of the common-law concept of theft. *E.g.*, *United States v. Henry*, 447 F.2d 283 (3d Cir. 1971). As discussed below, Congress selected the term "theft" as opposed to "stealing." This choice, in the context of existing federal statutes using the term "stealing," suggests a deliberate decision to apply the term "theft" as a term of art, which preserves the long-recognized distinction between permanent and temporary takings.

Title 18 of the United States Code generally categorizes theft-related offenses under Chapter 31, entitled "Embezzlement and Theft." 18 U.S.C. §§ 641-669 (1994 & Supp. IV 1998). Section 661, the provision most closely addressing unlawful taking of property, prohibits "within the special maritime and territorial jurisdiction of the United States, tak[ing] and carry[ing] away, with intent to steal or purloin, any personal property of another." The courts have held that this provision applies to temporary as well as permanent takings. *See, e.g., United States v. Henry*, *supra* (holding that 18 U.S.C. § 661 broadens the common-law crime of larceny because the words "steal" and

"purloin" were used instead of the term "larceny" to describe the punishable offense). Notably, however, the federal statute requires proof of "intent to steal or purloin" whereas the California statute allows convictions for taking "with or without intent to steal the vehicle." *Compare* 18 U.S.C. § 661 (1994) *with* Cal. Veh. Code § 10851(a) (West 1995).

The Dyer Act provision, 18 U.S.C. § 2312, which prohibits transport of stolen vehicles in interstate commerce, has also been interpreted to apply without regard to proof of an intent to take the vehicle permanently. *United States v. Turley*, 352 U.S. 407 (1957). Like 18 U.S.C. § 611, the Dyer Act provision enlarges the common-law approach to larceny and theft. *Id.* Neither statute, however, defines or uses the term "theft." Additionally, the Dyer Act provision is specific to motor vehicles moved across state lines, whereas the term "theft" in section 101(a)(43)(G) of the Act is used in regard to the taking of any personal property. Therefore, 18 U.S.C. § 611 and the Dyer Act provision provide less than a definitive answer with respect to the meaning of "theft" as used in section 101(a)(43)(G) of the Act.

Had Congress meant to move to a broader definition of "theft," it could have used the term "steal" or could have referred to crimes defined in 18 U.S.C. §§ 641-669 or in the Dyer Act. Because Congress chose not to do so, the federal law relied upon by the majority is not of much help in providing a definitive answer as to the meaning of the term "theft" in section 101(a)(43)(G) of the Act. Particularly considering that the California statute allows convictions for a taking "with or without the intent to steal the vehicle," the majority's reliance on federal law in the context of this state statute is seriously called into question. *See* Cal. Veh. Code § 10851(a).

### 3. Theft Offenses Under Section 101(a)(43)(G) of the Act

The question here is whether Congress intended, in classifying theft offenses as aggravated felonies, to completely discard the distinction between permanent and temporary takings or to continue to recognize that distinction in appropriate cases. If, as the majority concludes, Congress intended to completely discard the distinction, harsh consequences will be imposed for what may be relatively minor offenses. Mere joyriding or temporary dispossession of property, without the intent to steal, becomes an aggravated felony, rendering an offender removable and ineligible for nearly all forms of relief, including withholding of removal.

Congress has not expressed an intent to extend the ordinary understanding of the scope of theft offenses in section 101(a)(43)(G) of the Act in such a manner. In the absence of any directive to the contrary, the most reasonable conclusion is that Congress intended to continue to recognize the well-established distinction between temporary dispossession of property and a taking which, by intent or circumstance, amounts to a permanent taking. This is particularly so when the Model Penal Code provisions

addressing theft and unauthorized use of vehicles continue to recognize and emphasize the distinction. As the Supreme Court has observed,

> Where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

*Morissette v. United States*, 342 U.S. 246, 263 (1952). The choice of the word "theft" in section 101(a)(43)(G) of the Act brings with it the distinction between permanent and temporary takings discussed above.

At the very least, the intent of Congress remains ambiguous as to whether temporary dispossessions are included in the term "theft," after examination of the state of the law at the time of passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). The majority asserts that Congress must have been aware of the Dyer Act provision, which had been broadly interpreted to preclude the need for showing intent to deprive permanently when there was movement of a motor vehicle across state lines, and that we should therefore presume that Congress employed the term "theft" as broadly in section 101(a)(43)(G). Our task, when Congress does not provide a definition, however, is not to pick and choose a particular provision of state or federal law as our template. Rather, we are instructed to apply the "ordinary, contemporary, and common meaning" of the term at issue. *Castro-Baez v. Reno, supra; see also United States v. Zavala-Sustaita*, *supra*; *United States v. Baron-Medina*, *supra*.

Had Congress fully surveyed the state of the law, as the majority assumes, it would have taken into account more than simply the federal statutory provisions addressing interstate movement of vehicles. Given the importance of the Model Penal Code as a reflection of state criminal law and as a benchmark for the development of that law, it is difficult to accept that Congress would have regarded the Dyer Act or other federal statutory provisions as indicative of the "ordinary, contemporary, and common meaning" of the term "theft." Had Congress so intended, it could have referred to a federal law provision, as it did in numerous other paragraphs of the Act. Its failure to expressly reference any federal provision, especially considering that it did reference particular federal provisions in other paragraphs of section 101(a)(43), suggests an intent to not specifically incorporate the federal law, over state law, into section 101(a)(43)(G). *See United States v. Zavala-Sustaita*, *supra*.

To the extent that there may be any lingering ambiguities regarding the intended scope of the term "theft" in section 101(a)(43)(G), doubts should be resolved in favor of continued recognition of the distinction between temporary and permanent takings in defining theft offenses. *See INS v.*

*Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) (directing courts and this agency to "constru[e] any lingering ambiguities in deportation statutes in favor of the alien") (citations omitted).

## B. Respondent's Conviction As a Theft Offense

A review of federal and state law, as well as of the Model Penal Code provisions concerning theft, leads to the conclusion that the general understanding of the concept of "theft" is that it does not include the full range of offenses encompassed by section 10851 of the California Vehicle Code. Notably, the offense of taking an automobile for temporary use under California law, categorized as a misdemeanor under the "joyriding" prohibition in former section 499b of the Penal Code, was amended in 1996 to apply only to bicycles and motorboats. 1996 Cal. Stat. ch. 660, § 3 (A.B. 3170). This amendment recognized that sections 499b and 10851 had afforded overlapping coverage for the offense of automobile joyriding. Since 1996, automobile joyriding is prosecuted only under section 10851, along with more serious instances of motor vehicles takings. Notably, a separate provision of the California Code penalizes "grand theft," i.e., the offense of feloniously stealing or taking a motor vehicle. *See* Cal. Penal Code § 487(d) (1999) (formerly § 487).

A state offense qualifies as an aggravated felony only if the "full range of conduct" covered by the criminal statute would be encompassed by the aggravated felony at issue. *United States v. Baron-Medina*, *supra*, at 1146; *United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir. 1994) (invoking the categorical approach and stating that the court looked "only at the statutory definition of [the crime], not the underlying factual circumstances of [the respondent's] crime"). When the statute at issue reaches both conduct that would constitute a theft and conduct that would not, as does section 10851 of the California Vehicle Code, we look to the record of conviction to determine whether the actual offense of which the respondent was convicted qualifies as a theft offense. *See Ye v. INS, supra; United States v. Baron-Medina*, *supra*, at 1146 n.3.

In the instant case, there is insufficient evidence in the record of conviction to indicate that the respondent intended either an extended deprivation or one that would make recovery by the owner unlikely. The charging document in this case is framed to include the entire range of offenses covered by section 10851, from joyriding to intentional permanent dispossession of a vehicle. The charging document is deliberately ambiguous as to whether the taking was permanent or temporary. It does not indicate that the respondent's use of the vehicle was other than for temporary use or mere joyriding. Although a jury might be permitted to resolve this issue based on the underlying facts, we are faced with a record of conviction in which the question of temporary versus permanent taking is left unresolved. We may

not resort to speculation in determining whether the respondent's conviction was for a taking that constitutes a "theft" under the aggravated felony statute. Nor may we look beyond the charging document to the particular facts underlying the conviction.[2] *Ye v. INS, supra*.

## IV. CONCLUSION

I would affirm the Immigration Judge's determination that the respondent's 1995 conviction under section 10851 of the California Vehicle Code is not for an aggravated felony theft offense and find that, although sentenced to 5 years' imprisonment for this offense, he is not barred from applying for withholding of removal.[3]

For the foregoing reasons, I would remand the record to the Immigration Judge to provide the respondent an opportunity to submit an application for withholding of removal to Lebanon under section 241(b)(3) of the Act.

---

[2]While it may be permissible in the context of a criminal trial for a jury or trier of fact to draw an inference from the underlying facts that the taking was permanent, we do not retry the criminal case in assessing whether an aggravated felony has been committed for purposes of determining removability. In a related context, in concluding that an alien was not deportable for a firearms violation under a statute criminalizing possession of a "weapon" where the record of conviction did not establish that the weapon was a firearm, we found that "[g]eneral evidence related to what a respondent has done—as opposed to specific evidence of what he was actually convicted of doing—is not relevant to the issue of deportability . . . because neither an Immigration Judge nor this Board can try or retry the criminal case." *Matter of Teixeira*, 21 I&N Dec. 316, 320 (BIA 1996) (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)).

[3]Although the majority does not reach the issue, I would find that the respondent's conviction under section 10851, if not an aggravated felony, is also not a "particularly serious crime" within the meaning of section 241(b)(3)(B) of the Act. *See Matter of S-S-*, Interim Decision 3374 (BIA 1999). Crimes against persons are generally considered more serious than crimes directed against property. *Id.*; *Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982), *modified, Matter of C-*, 20 I&N Dec. 529 (BIA 1992), *Matter of Gonzalez*, 19 I&N Dec. 682 (BIA 1988). However, even crimes involving risk to other persons are not necessarily particularly serious crimes. We have held, for example, that the crime of alien smuggling, under dangerous circumstances but where there was no injury, was not a particularly serious crime. *Matter of L-S-*, 22 I&N Dec. 645 (BIA 1999). The respondent's conviction under section 10851 of the California Vehicle Code is for a crime against property. Although there may be a risk that, in the commission of the criminal act, the defendant would be involved in activity that might be a particularly serious offense, such conduct is not necessary for a conviction under section 10851. The respondent's 5-year sentence for the offense, although lengthy, was partly a result of sentence enhancement. *See* Cal. Penal Code §§ 666.5, 667.5(b) (West 1995) (calling for enhanced sentences for repeat offenders).