PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1085

JULIO C. DAVID CASTILLO,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: October 30, 2014          Decided: January 14, 2015

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

Petition for review granted and order of removal vacated by published opinion. Judge Keenan wrote the opinion, in which Judge Duncan and Judge Diaz joined.

**ARGUED:** Ellis Charles Baggs, BAGGS LAW GROUP, PLC, Mechanicsville, Virginia, for Petitioner. Nicole J. Thomas-Dorris, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Stuart F. Delery, Assistant Attorney General, Civil Division, John S. Hogan, Senior Litigation Counsel, Aimee J. Carmichael, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

BARBARA MILANO KEENAN, Circuit Judge:

Julio C. David Castillo, a citizen of Honduras, filed this petition seeking review of a decision by the Board of Immigration Appeals (BIA) dismissing Castillo's appeal from an immigration judge's order of removal. The BIA determined that Castillo was removable based on his conviction in 1995 of unauthorized use of a motor vehicle, in violation of Virginia Code § 18.2-102. The BIA held that this offense qualified as an "aggravated felony" under the category of "theft offense" as listed in 8 U.S.C. § 1101(a)(43)(G). Upon our review, we disagree with the BIA's conclusion and hold that Castillo's conviction did not constitute an "aggravated felony," because the full range of conduct covered by the Virginia crime of "unauthorized use" does not qualify as a "theft offense," as that term has been defined by the BIA. We therefore grant Castillo's petition for review and vacate the order of removal.

I.

Castillo entered the United States as a lawful permanent resident in July 1982, when he was about 11 years old. In 1995, Castillo was convicted in a Virginia state court of unauthorized use of a motor vehicle, in violation of Virginia Code § 18.2-102 (unauthorized use). That statute states, in relevant part:

2

> Any person who shall take, drive or use any . . .
> vehicle . . . not his own, without the consent of the
> owner [] and in the absence of the owner, and with
> intent temporarily to deprive the owner [] of his
> possession [], without intent to steal the same, shall
> be guilty of a Class 6 felony . . . [unless] the value
> of such . . . vehicle . . . shall be less than $200,
> such person shall be guilty of a Class 1 misdemeanor.

Va. Code § 18.2-102 (unauthorized use statute). The Virginia court sentenced Castillo to serve a term of 18 months' imprisonment, with all but 35 days suspended.

In January 2012, the Department of Homeland Security (DHS) issued a "notice to appear," and initiated removal proceedings against Castillo based on 8 U.S.C. § 1227(a)(2)(A)(iii), which authorizes the Attorney General to remove "[a]ny alien who is convicted of an aggravated felony at any time after admission." DHS contended that Castillo's unauthorized use conviction in 1995 qualified as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G), because the crime was "a theft offense . . . for which the term of imprisonment [was] at least one year." § 1101(a)(43)(G) (Subsection G).

Although Castillo conceded that the sentence for his unauthorized use conviction exceeded the one-year requirement of Subsection G, he disputed that his conviction qualified as a "theft offense." The immigration judge (IJ) rejected Castillo's argument, holding that Castillo was removable because the

3

Virginia offense of unauthorized use necessarily proscribed conduct that qualified as a "theft offense" under Subsection G.

On appeal from the IJ's decision, the BIA reviewed the statutory language in Virginia Code § 18.2-102, and concluded that the statutory elements of unauthorized use "essentially mirror[ed]" the BIA's previously adopted definition of "theft offense," which included the taking of property with the "intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." Accordingly, the BIA dismissed Castillo's appeal. Castillo later filed this petition for review of the BIA's decision.[1]

II.

On appeal, Castillo contends that the BIA erred in holding that his unauthorized use conviction qualified as a "theft offense" under Subsection G. Castillo asserts that the BIA failed to recognize an essential aspect of the Virginia crime of

---

[1] By order dated December 22, 2014, we directed the government to release Castillo from custody, indicating that this decision would provide the reasons for our order. In considering this appeal, we observe that judicial review is generally precluded in cases involving aliens who are removable as aggravated felons. 8 U.S.C. § 1252 (a)(2)(C); Kporlor v. Holder, 597 F.3d 222, 225-26 (4th Cir. 2010). However, we retain jurisdiction to review constitutional claims or questions of law, including whether an underlying crime qualifies as an aggravated felony. 8 U.S.C. § 1252(a)(2)(D); Soliman v. Gonzales, 419 F.3d 276, 280 (4th Cir. 2005).

4

unauthorized use, which distinguishes that crime from a "theft offense" under Subsection G. According to Castillo, the temporary deprivation of possession encompassed by the Virginia unauthorized use statute necessarily includes de minimis deprivations of ownership interests, while such de minimis deprivations expressly are excluded from the BIA's definition of a "theft offense." Thus, Castillo submits that the Virginia crime of unauthorized use is not a "theft offense" under the BIA's definition.

In response, the government argues that the BIA correctly determined that the elements of unauthorized use in Virginia are a "categorical match" to the elements of a "theft offense" as defined by the BIA. The government further maintains that Castillo has presented only a theoretical possibility that the Virginia statute would be applied to conduct resulting in de minimis deprivations of an owner's interest in property. We disagree with the government's position.

A.

Under the Immigration and Nationality Act (INA), a non-citizen is removable if he is "convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA defines "aggravated felony" by enumerating a long list of crimes, including murder, rape, sexual abuse of a minor, drug and firearm trafficking, and fraud offenses in which the loss

5

exceeds $10,000.  See 8 U.S.C. § 1101(a)(43).  Also among these listed crimes is a "theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [was] at least one year."  8 U.S.C. § 1101(a)(43)(G).  The INA does not define the term "theft offense."

We have held that substantial deference is owed to the BIA's statutory interpretation of the term "theft offense" in Subsection G.  Soliman v. Gonzales, 419 F.3d 276, 281 (4th Cir. 2005) (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)); see also INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) (explaining that Chevron deference applies when the BIA "gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication") (internal quotation marks and citations omitted).  Such deference is accorded based on the agency's responsibility to administer the INA.  Soliman, 419 F.3d at 281 (citing Chevron, 467 U.S. at 843).  Under the holding in Chevron, we are required to accept the BIA's construction of an otherwise silent or ambiguous statute, unless such construction is "arbitrary, capricious, or manifestly contrary to the statute."  467 U.S. at 843-44.

The BIA's principal decision interpreting the term "theft offense" is In re V-Z-S-, 22 I. & N. Dec. 1338 (BIA 2000) (VZS).  In VZS, which the BIA cited in the case before us, the BIA

6

considered whether the "unlawful driving or taking of a vehicle," in violation of California law, was a "theft offense" within the meaning of Subsection G. Id. at 1346-47. The BIA categorized the California crime as a "theft offense," even though the California statute did not require an intent to permanently deprive the owner of the property, as would be required for common law larceny. See id. at 1347-48 (citing Cal. Vehicle Code § 10851(a), which included as an element the intent "either to permanently or temporarily deprive the owner" of his "title to or possession of the vehicle, whether with or without intent to steal").

The BIA reached this conclusion in VZS after determining that "Congress' use of the term 'theft' is broader than the common-law definition" of larceny. Id. at 1345-36. The BIA thus construed the term "theft offense" to encompass the taking of property when "there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." Id. at 1346. Notably, however, in articulating this construction of the statute, the BIA emphasized that "[n]ot all takings of property . . . will meet this standard[,] because some takings entail a de minimis deprivation of ownership interests" and constitute only a "glorified borrowing" of property. Id. By this

7

language, the BIA explicitly acknowledged that not all takings of property will constitute "theft offenses" under the INA.

Five years after the BIA issued its decision in VZS, this Court considered the meaning of the term "theft offense" as used in Subsection G. We held that Congress intended qualifying crimes to include an element of taking of property "without consent," and to exclude the circumstance of obtaining property by fraud. Soliman, 419 F.3d at 283. Based on our decision in Soliman and certain other circuit court decisions, the BIA refined its definition of "theft offense" for purposes of Subsection G, clarifying that this term "consists of the taking of, or exercise of control over, property without consent whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." In re Garcia-Madruga, 24 I. & N. Dec. 436, 440 (BIA 2008).

This definition of "theft offense" has been applied by the Supreme Court and by many of our sister circuits.[2] See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 189 (2007); Burke v. Mukasey,

---

[2] We observe that in Gonzales v. Duenas-Alvarez, 549 U.S. 183 (2007), the Supreme Court did not adopt the BIA's definition of a theft offense, but instead explained that many circuit courts had accepted that definition. Id. at 189. Based on the question presented in Duenas-Alvarez, namely, whether aiding and abetting a theft offense qualifies as a theft offense, it was not necessary for the Court to review the reasonableness of the BIA's definition.

8

509 F.3d 695, 697 (5th Cir. 2007); United States v. Corona-Sanchez, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc); Hernandez-Mancilla v. INS, 246 F.3d 1002, 1009 (7th Cir. 2001); United States v. Vasquez-Flores, 265 F.3d 1122, 1125 (10th Cir. 2001); see also Lecky v. Holder, 723 F.3d 1, 5 (1st Cir. 2013) (adopting the BIA's definition of "theft offense" as stated in VZS); Almeida v. Holder, 588 F.3d 778, 784-85 (2d Cir. 2009) (same); Jaggernauth v. U.S. Att'y Gen., 432 F.3d 1346, 1353 (11th Cir. 2005) (same). Because the BIA applied this definition in the present case, we likewise consider the same definition in this appeal. However, we are not required to decide whether the BIA's definition constitutes a reasonable construction of Subsection G because, for purposes of our analysis, the Virginia crime of unauthorized use does not qualify as a "theft offense" even under this definition. Accordingly, we apply here the BIA's definition, namely, "the taking of, or exercise of control over, property without consent whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." See Garcia-Madruga, 24 I. & N. Dec. at 440; see also VZS, 22 I. & N. Dec. at 1345-46.

B.

We turn to consider whether a Virginia conviction for unauthorized use qualifies as an aggravated felony "theft

9

offense" under the above definition. We consider this legal question de novo. Karimi v. Holder, 715 F.3d 561, 566 (4th Cir. 2013).

To determine whether a particular state offense constitutes an aggravated felony under the INA, we employ a categorical approach. See Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013); Garcia v. Holder, 756 F.3d 839, 843 (5th Cir. 2014). Under this approach, we compare the aggravated felony definition of "theft offense" with the elements of the state crime at issue, Virginia unauthorized use. Descamps v. United States, 133 S. Ct. 2276, 2283-84 (2013) (citing Taylor v. United States, 495 U.S. 575 (1990)). "[A] state offense is a categorical match" with a federal offense "only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." Moncrieffe, 133 S. Ct. at 1684 (citation, internal quotation marks, and alterations omitted). Therefore, in conducting this review, we focus on the minimum conduct necessary for a violation of the state statute, while ensuring that there is a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." Duenas-Alvarez, 549 U.S. at 193. Additionally, "[t]o the extent that the statutory definition of the prior offense has been

10

interpreted" by the state's appellate courts,[3] "that interpretation constrains our analysis of the elements of state law." See United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir. 2014) (en banc).

C.

With this legal framework in mind, we turn to consider the elements of the Virginia statutory crime of unauthorized use, both with regard to the statutory language and to the manner in which the crime has been interpreted by Virginia's appellate courts. The Virginia unauthorized use statute prohibits in relevant part (1) the taking, driving, or use of another's vehicle, (2) without consent of the owner, and (3) with the intent to temporarily deprive the owner of his possession of the vehicle but without intent to steal the vehicle. Va. Code

---

[3] This Court has deferred to statutory interpretation conducted by the "state's highest court." United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir. 2014) (en banc). However, when the state's highest court has not engaged in such statutory interpretation, a "state's intermediate appellate court decisions 'constitute the next best indicia of what state law is,' although such decisions 'may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir. 1992) (quoting 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4507 (1982)). Further, as explained below, the Supreme Court of Virginia has relied on the analysis conducted by the Court of Appeals of Virginia in Overstreet v. Commonwealth, 435 S.E.2d 906 (Va. Ct. App. 1993), with regard to consensual use takings that qualify as unauthorized use offenses. See Tucker v. Commonwealth, 604 S.E.2d 66 (Va. 2004).

11

§ 18.2-102; see Reese v. Commonwealth, 335 S.E.2d 266, 267 (Va. 1985).

A review of the decisions in Virginia addressing unauthorized use shows that convictions under the statute arise from a broad range of circumstances. Convictions have resulted in certain cases from conduct involving obvious trespassory takings in which the defendant's conduct demonstrates a clear intent to deprive the owner of the use of his property. See Hewitt v. Commonwealth, 194 S.E.2d 893 (Va. 1973) (affirming defendant's conviction for unauthorized use when defendant participated in "hotwiring" a stranger's parked car and used the car for one night). However, unauthorized use convictions also have resulted from conduct involving takings when an owner initially has given a defendant consent to use the property. See Tucker v. Commonwealth, 604 S.E.2d 66 (Va. 2004) (conviction upheld when defendant was permitted to use the owner's car to drive to a restaurant but kept the car for several days); Eley v. Commonwealth, 1997 Va. App. LEXIS 146, at *4 (Va. Ct. App. Mar. 11, 1997) (explaining that a prima facie case of unauthorized use is established when "the evidence shows that the borrower's use of the vehicle exceeded the scope and duration of the owner's consent").

In a frequently cited case in the context of consensual use, Overstreet v. Commonwealth, the defendant was permitted to

12

borrow a vehicle during a 30-minute lunch break, but kept the vehicle beyond that time and was apprehended while driving the vehicle about 14 hours later. 435 S.E.2d 906 (Va. Ct. App. 1993). The Court of Appeals of Virginia (the Virginia court) explained that when the defendant exceeded the scope and duration of the owner's authorization, the defendant committed a trespassory taking and violated the owner's possessory right under the statute. Id. at 908; see also Montague v. Commonwealth, 579 S.E.2d 667, 670 (Va. Ct. App. 2003) (stating that proof of a statutory violation requires that a defendant "knew he was not authorized to use the vehicle").

The Virginia court emphasized in Overstreet the broad range of conduct encompassed by unauthorized use statutes such as Virginia Code § 18.2-102. The court observed that, under such statutes, a crime "may be committed by an employee of the owner of a motor vehicle in using the vehicle for his own purposes not connected with the purposes for which the vehicle had been entrusted to him or in using the vehicle contrary to the instructions of the owner." Overstreet, 435 S.E.2d at 908 (citation omitted). The Virginia court further explained that when "an act violates the specific scope or duration of consent to use a vehicle, a trespassory taking contemplated by Code § 18.2-102 occurs." Id.

13

Under this reasoning, Virginia law, as articulated by the state's appellate courts, permits a conviction for unauthorized use when an owner authorizes an individual to use the owner's vehicle for a stated purpose, but the individual uses the vehicle for a different purpose even if within the timeframe and other specifications of the authorized use. Such a situation occurred in Medlin v. Commonwealth, 2004 Va. App. LEXIS 527 (Va. Ct. App. Nov. 9, 2004).

There, an employee's conviction for unauthorized use was upheld based on his use of the employer's vehicle in a manner not specifically authorized when the vehicle was entrusted to him, even though the employer customarily authorized employees to use the vehicle in the same manner. Id. The situation in that case arose when the employer authorized the defendant to drive the employer's tow truck to obtain some medicine, but further instructed the defendant to take the truck home and "park it." Id. at *2. During that night, however, the defendant used the vehicle to tow another truck without notifying his employer in advance. Id. at *2-3.

The employer testified that he often permitted employees to take the tow trucks to their homes, and also permitted employees on those occasions to use the tow trucks to perform private towing services on their "nights off," provided that the employees contacted the employer before using the tow truck for

14

such purposes.  Id. at *3.  The Virginia court upheld the conviction on the basis that the defendant operated the tow truck for towing services without contacting the employer in advance, thereby exceeding the scope of the specifically authorized use.  Id. at *6-7.

The decision in Medlin demonstrates that the Virginia crime of unauthorized use encompasses a defendant's use of a vehicle in a manner not specifically authorized by its owner, even if such use is consistent with the owner's general policy regarding use, occurs during the period the vehicle is entrusted to the defendant, and results in no damage to the vehicle.  Thus, violations of the Virginia unauthorized use statute can and do arise based on circumstances in which the defendant's use of property deviates only slightly from the specific scope of consensual use, resulting in an insignificant effect on ownership interests.[4]  These circumstances stand in stark contrast to crimes involving the intentional, nonconsensual takings that typically involve significant impairment of ownership rights and damage to the property as described by the

---

[4]  We observe that our discussion of "de minimis deprivations" focuses on the degree and the effect of the deprivation of an owner's interest in his property, rather than merely on the duration of the unauthorized use of that property.

15

BIA in its elaboration of the term "theft offense." See VZS, 22 I. & N. Dec. at 1349.

Given the application of the Virginia unauthorized use statute to even de minimis deprivations of ownership interests, we conclude that the statute covers circumstances typically viewed as "glorified borrowing," which the BIA has determined fall outside the definition of a "theft offense." See id. at 1346. Therefore, the BIA's conclusion that Virginia unauthorized use is a "theft offense" is erroneous as a matter of law because the BIA focused solely on the statutory language and disregarded the fact that Virginia's courts have held even de minimis deprivations of ownership interests to be statutory violations.[5] See Aparicio-Soria, 740 F.3d at 154. Accordingly, we hold that because there is "a realistic probability" Virginia would apply its unauthorized use statute to conduct that falls outside the BIA's definition of "theft offense," see Duenas-

---

[5] We additionally observe that the government's position fails to recognize a procedural mechanism in Virginia in which trial courts have the discretion to continue a felony case for future disposition, place conditions of conduct on the defendant, and ultimately dismiss the case if the defendant has complied with the court's prescribed conditions. See Hernandez v. Commonwealth, 707 S.E.2d 273 (Va. 2011). Although the existence of this procedural mechanism does not directly impact our analysis in the present case, the mechanism provides a probable explanation for the paucity of appellate decisions addressing de minimis takings in violation of the Virginia unauthorized use statute.

16

<u>Alvarez</u>, 549 U.S. at 193, Virginia unauthorized use does not qualify categorically as an "aggravated felony" under Subsection G.[6]


                                III.

Because the BIA erred as a matter of law in determining that Castillo previously had been convicted of an "aggravated felony" within the meaning of Subsection G, we grant Castillo's petition for review and vacate the order for his removal.[7]


                              <u>PETITION FOR REVIEW GRANTED</u>
                              <u>AND ORDER OF REMOVAL VACATED</u>

_____

   [6] Additionally, we recently held that the Virginia crime of larceny does not qualify as a "theft offense" within the meaning of Subsection G. <u>Omargharib v. Holder</u>, No. 13-2229, ___ F.3d ___ (4th Cir. Dec. 23, 2014). Although the rationale employed in <u>Omargharib</u> is not directly applicable to the present case, we observe that courts in Virginia have described unauthorized use as a "lesser included" offense of larceny. <u>Tucker</u>, 604 S.E.2d at 68 (citing <u>Hewitt</u>, 194 S.E.2d at 894). Thus, under the BIA's decision in the present case, an anomalous and unreasonable result would occur if a conviction of the "lesser" crime of unauthorized use formed the basis for removability under Subsection G, while the greater crime of larceny would not.

   [7] Contrary to the government's assertion that we should remand for consideration whether to apply the modified categorical approach, the Supreme Court's decision in <u>Descamps</u> made clear that this approach applies only to divisible statutes. 133 S. Ct. at 2283. A statute is divisible only when it contains one or more alternative elements. <u>Id.</u> at 2283-84. Although the Virginia unauthorized use statute details various means of committing the crime, the statute does not list alternative elements creating different crimes. Thus, the modified categorical approach is wholly inapplicable here.

17